IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

JOSE A. BARREIRO LOPEZ AND DORIS I. PALACIOS RIVAS,

Plaintiffs

v.

UNIVERSAL INSURANCE COMPANY.

Defendant.

CASE NO. 13-1478 (GAG)

**OPINION AND ORDER**

Jose A. Barreiro Lopez ("Barreiro") and Doris I. Palacios Rivas (collectively "Plaintiffs") commenced this action seeking compensatory damages against Universal Insurance Company ("Defendant") under Article 1802 of the Puerto Rico Civil Code ("Article 1802"), P.R. Laws Ann. tit. 31, § 5141. (Docket No. 1.) Plaintiffs, both residents of Bilbao, Spain, invoke the court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, seeking to hold Defendant liable for damages allegedly suffered when Barreiro lost the tip of the third finger on his left hand from an accident that occurred on Plaintiffs' leased property. Id.

Presently before the court is Defendant's motion for summary judgment (Docket No. 33), which Plaintiff opposed. (Docket No. 39.) After careful consideration, the court **DENIES** Defendant's motion for summary judgment at Docket No. 33.

**I.   Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez,

440 F.3d 17, 21 (1st Cir. 2006) (quoting <u>Benoit v. Technical Mfg. Corp.</u>, 331 F.3d 166, 173 (1st Cir. 2003)).

**II.     Relevant Factual and Procedural Background**

Mr. Anton B. Guernica ("lessor"), owner of the property leased to Plaintiffs, obtained an insurance policy for the leased property. (Docket Nos. 1 & 4.) During the month of December, 2008, Lessor and Plaintiffs signed the first lease agreement, leasing Guernica's property to Plaintiffs for a period of twelve (12) months. (<u>See</u> Docket No. 39-1.) A Second Lease Agreement was signed in January, 2009, leasing the property for an additional twelve (12) months. (<u>See</u> Docket No. 39-2.) In the Second Lease Agreement, the parties added an addendum, which was not included in the terms of the first agreement, to now make the lessee, i.e. Plaintiffs, responsible for the maintenance of the green areas and the pool. <u>Id.</u> at 3.

Thereafter, on November 14, 2009, Barreiro was pulling his boat out of the water on his leased property. (Docket No. 33 ¶ 13.) Barreiro was using an electric two-crane mechanism located on the premises and owned by the lessor. <u>Id.</u> Once he got the boat out of the water, he began lowering it to place it on a plank. <u>Id.</u> While lowering it, he noticed that the crane that was lowering the back part of the boat was working slower than the other crane. <u>Id.</u> He turned the power off on both cranes and proceeded to attempt to see what was causing the malfunction. <u>Id.</u> While he was leaning on the crane, he touched a steel braided cable, which resulted in the loss of his third finger distal phalange. <u>Id.</u> Barreiro was rushed to the hospital. (Docket No. 33-4.) Despite receiving medical attention, Barreiro lost the tip of his index finger. <u>Id.</u>

On April 9, 2010, Plaintiffs filed a complaint before the Commonwealth Court of First Instance. That action came to an end on September 10, 2012, after Plaintiffs moved for dismissal

without prejudice. (Docket No. 1.) On June 18, 2013, Plaintiffs filed the instant action, seeking damages for their alleged injuries under Article 1802 of the Puerto Rico Civil Code. <u>Id.</u>

Defendant moves for summary judgment, arguing that, pursuant to the Second Lease Agreement, it is not liable for Plaintiffs' damages because it was Plaintiffs' duty to provide maintenance to the crane. (Docket No. 32.) Likewise, Defendant argues that even if it was the lessor's responsibility, Plaintiffs had knowledge of the crane's deteriorated condition, and failed to notify the lessor, as established by the Second Lease Agreement. <u>Id.</u> at 9. For that reason, Defendant contends that Barreiro was contributorily negligent by failing to notify the lessor of the crane's deteriorated condition, and, as such, therefore he assumed the risk of his actions when he touched the crane and lost his finger. <u>Id.</u> In addition, Defendant contends that Barreiro's injuries were not foreseeable. <u>Id.</u> In response, Plaintiffs contend that the lessor, according to the lease agreement, was responsible for the maintenance to the crane, but failed to provide it. (Docket No. 38.) Consequently, Plaintiffs contend that the accident would have been avoided if lessor had provided the appropriate maintenance to the crane. <u>Id.</u>

**III.   Discussion**

The crux of the parties' arguments lies on who had the duty provide maintenance to the crane that caused Barreiro's injuries. Both parties agree that the accident was caused by the crane's deteriorated condition due to lack of maintenance.

The substantive law of Puerto Rico governs the instant diversity action based on Puerto Rico torts and contract law. <u>See</u> <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 78 (1938). Article 1802 of the Puerto Rico Civil Code establishes the elements for a general torts claim. These are: "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or

4

omission (in other words, proximate cause)." Vázquez-Filippetti v. Banco Popular, 504 F.3d. 43, 49 (1st Cir. 2007); see also Torres v. KMart Corp., 233 F. Supp. 2d 273, 277-78 (D.P.R. 2002). The court need not examine the first element, as Plaintiffs' physical and emotional damages are not being challenged.

Puerto Rico's general tort statute recognizes comparative negligence principles. P.R. LAWS. ANN. tit. 31, § 5141. Thus, "[i]n Puerto Rico, when a negligent act is caused by the actions of more than one person, each person is a joint tortfeasor and is liable in full to the plaintiff for the harm caused." García Colón v. García Rinaldi, 340 F. Supp. 2d 113, 126 (D.P.R. 2004) (citations omitted). In the present case, Defendant argues that Barreiro was contributorily negligent in his actions that lead to his injuries. (See Docket No. 4.)   As such, the discussion centers on elements two and three and their particulars.

### A. Duty owed

As noted above, the parties primarily disagree as to who was responsible for the maintenance of the crane that caused Barreiro's accident. On one hand, Plaintiffs contend that the lessor defaulted by not providing maintenance to the crane. (Docket No. 38.) On the other hand, Defendant sustains Plaintiffs were responsible for the crane's maintenance. (Docket No. 32 at 9.)

In 1802 actions, when the second element, i.e., the breach of duty, is based on an omission, the defendant must have had a duty to act. Rodríguez-Quiñones v. Jiménez & Ruiz, S.E., 402 F.3d 251, 254-55 (1st Cir. 2005); Muniz v. National Can Corp., 737 F.2d 145, 148 (1st Cir. 1984). The Civil Code establishes that "a legal duty arises in one of three ways: (1) by a statute, regulation, ordinance, bylaw or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to

the situation." De Jesus-Adorno v. Browning Ferris Indus., 160 F.3d 839, 842 (1st Cir. 1998); see also Sanchez v. Seguros Triple S, Inc., 687 F. Supp. 2d 6, 9 (D.P.R. 2010).

In this case, the lessor's alleged duty to act emanates from the Second Lease Agreement. As such, to determine whether the lessor had a duty to act, the court turns to the language of the Second Lease Agreement that relates to repairs. Defendant emphasizes Paragraph six (6) of the Second Lease Lease Agreement, which states:

> The LESSEE shall be responsible for the cost of any ordinary repairs due to the normal use of the property. For any repairs with a cost in excess of $250.00 dollars, the LESSEE shall notify the LESSOR of the situation, who will be responsible for making sure said repairs are carried out within the following (5) business days. Failure by the LESSOR to begin repairs within five business [sic] automatically authorizes the LESSEE to effect said repairs at the LESSE"s expense and to deduct the amount paid in excess of $250.00 from the month.

(Docket No. 40-1.)[1] Defendant posits that the first sentence of paragraph six of the Lease Agreement establishes that Plaintiffs have the responsibility for *all* "ordinary repairs" caused by the normal use, i.e., the "wear and tear," of the property, which included the crane's maintenance. In response, Plaintiffs point to another provision of the agreement. As noted above, in the Second Lease Agreement, the parties added an addendum, which was not included in the terms of the previous agreement, now making the lessee, i.e. Plaintiffs, responsible for the maintenance of the green areas and the pool. Id. at 3. To that extent, Plaintiffs posit that the Second Lease Agreement's express delegation of specific maintenance responsibilities to the lessee automatically

---

[1] The Puerto Rico Civil Code has a disposition similar to the above-cite provision of the second lease agreement. Article 1444 states that "[t]he lessor is obliged: (2) to make […] during the lease, all the necessary repairs in order to preserve it in condition to serve for the purpose to which it was destined." P.R. LAWS ANN. tit 31, § 4051. Likewise, the lessee is obligated to give notice to the owner, with the least possible delay, of the necessity of all those repairs. P.R. LAWS ANN tit. 31, § 4056. Moreover, the Puerto Rico Supreme Court has stated that "[e]ven though it is the duty of the lessor to repair the thing, object of the lease, the failure to do so is not sufficient grounds to claim damages where from the facts alleged the necessity to repair does not appear with due certainty." Suarez v. Suarez, 47 P.R.R. 93 (1934). Consequently, a lessor's liability for damages stemming from a breach of its duty to repair is not automatic.

imposed upon the lessor the duty to cover the costs of the repairs to the property in general.  Id. However, an examination of the Second Lease Agreement reveals that it kept the language of the First Lease Agreement that established the lessor's duty to *maintain* the property in good condition.  Paragraph five (5) of the both lease agreements reads as follows:

> The LESSEE accepts that the LESSEE has inspected the property; including the plumbing, electrical system and the equipment located inside the property and that the LESSEE receives such in good condition. The LESSEE agrees to maintain the property in good condition and to deliver it as it was received, ordinary wear and tear excepted.

(Docket Nos. 40-1; 40-2.)

Nevertheless, during the time the first Lease Agreement was in effect, the former insurance provider took care of the swimming pool maintenance and the property's landscaping.  (Docket Nos. 33 ¶ 12; 39 ¶ 12.)  Moreover, during that time, the lessor provided repairs to a damaged air conditioning unit and a microwave, as per Plaintiffs' notice.  Id.  As such, Plaintiffs argue that by providing maintenance to the property, the lessor assumed the duty of providing maintenance to the crane. (Docket No. 38 at 4.)  Consequently, Plaintiffs argue the Lease Agreement is unclear as to the meaning of the word "maintain" of paragraph six as it is in conflict with the repair provisions of paragraph five and the maintenance duties delegated to Plaintiffs in the addendum of the Second Lease Agreement.

The interpretation of a contract is a substantive area of the law which is governed by articles 1233 and 1234 of the Civil Code of Puerto Rico.  P.C.M.E. Commercial, S.E. v. Pace Membership Warehouse, Inc., 952 F. Supp. 84, 90-91 (D.P.R. 1997) (citing Borschow Hosp. & Medical v. Castillo, 96 F.3d 10, 15 (1st Cir. 1996); Hopgood v. Merrill Lynch, Pierce, Fenner & Smith, 839 F.Supp. 98, 104 (D.P.R. 1993);  Marina Industrial Inc. v. Brown Boveri Corp., 114 P.R. Dec. 64, 72 (1983)).  Articles 1233 and 1234 state "[i]f the terms of a contract are clear and

leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.  If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail." P.R. LAWS ANN. tit. 31, § 3471. "In order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract." P.R. LAWS ANN. tit. 31, § 3472. "The First Circuit, citing Marina Industrial, has consistently stated that article 1233 is strict in its mandate that courts should enforce the literal sense of a written contract, unless the words are somehow contrary to the intent of the parties." P.C.M.E. Commercial, S.E., 952 F. Supp. at 90-91. "When the document leaves doubts as to the intentions of the parties, the court must look beyond the literal terms." Id.  (citing Catullo v. Metzner, 834 F.2d 1075, 1079-80 (1st Cir. 1987).

The court thus finds the Lease Agreement to be unclear and conflicting as to this point, and thus, must look to the parties' intentions in order to interpret the contract.  The court is unable to discern the intentions of the contracting parties regarding the duty to provide maintenance of the crane by simply examining the plain language of the Second Lease Agreement.  Even looking to the few actions taken by the parties before and after executing the lease agreements, the court cannot ascertain the parties' intentions as to who was responsible for the crane's maintenance. "The intent of contracting parties is 'generally . . . deemed a material issue of fact' precluding summary dismissal." Tropeano v. Dorman, 441 F.3d 69, 75 (1st Cir. 2006) (quoting Blanchard v. Peerless Ins. Co., 958 F.2d 483, 488 (1st Cir. 1992)).

Despite the court's determination that an issue of fact exists with respect to the duty element, the court must still address the issue of foreseeability.

### B. Foreseeability

Liability will only arise under a failure to act if the damages complained of were reasonably foreseeable to the defendant. P.R. LAWS ANN. tit. 31, § 3022. To foresee is to "provide against, to anticipate, or to avoid an injury or danger." Lopez v. Cruz, 131 P.R. Dec. 694, 708 Offic. Slip Trans. at 11 (1992) (citing Salva Matos v. Diana Const. Corp., 95 P.R. Dec. 900, 906, 95 P.R.R 880, 884 (1968)). Within the second and third prong of Article 1802 lies the foreseeability element. The foreseeability standard is governed by the definition of fault and negligence established in Article 1057 of the Puerto Rico Civil Code:

> The fault or negligence of the debtor consists of the omission of the steps which may be required by the character of the obligation and which may pertain to the circumstances of the persons, time, and place. Should the obligation not state what conduct is to be observed in its fulfillment, that observed by a good father of a family shall be required.

P.R. LAWS ANN. tit. 31, § 3021. "The . . . requirements [for a tort claim] cannot be satisfied unless the plaintiff proves, *inter alia*, that the injury was reasonably foreseeable (and, thus, could have been avoided had the defendant acted with due care." Woods-Leber v. Hyatt Hotels of P.R., 124 F.3d 47, 52 (1st Cir. 2007). "The rule of foreseeability does not mean that the precise risk or the exact result which was encountered should have been foreseen. The essential factor is to be under a duty to foresee, *in a general way,* consequences of a particular type." Gines v. Aqueduct & Sewer Auth., 86 P.R.R. 490, 496 (1962). "Key in any negligence action is the element of foreseeability, necessary to establish causation. Thus, a defendant, even though negligent, will be relieved of liability whenever an intervening cause produces an unforeseeable result." Chapman v. E.S.J. Towers, Inc., 803 F. Supp. 571, 574 (D.P.R. 1992). In most negligence cases, a defendant's duty "is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." Id. (citing Ortiz v. Levvitt & Sons of P.R., Inc., 1 P.R. Offic. Trans. 407, 101 P.R. Dec. 290 (1973)).

> [T]he negligent act is defined as a breach of the duty imposed or recognized by law, to act, as would a prudent and reasonable man, ... in order not to expose to foreseeable and unreasonable risks of damages, as a result of the actor's behavior, those persons who ... a prudent and reasonable man would have foreseen ... would be exposed to the unreasonable risk created by the actor. In other words, a person breaches the duty of reasonable care when his actions create reasonably foreseeable risks.

Vázquez-Filippetti, 504 F.3d. at 49 (internal quotations omitted).

Even if a jury reasonably could find that Defendant beached the duty owed, a breach of that duty is not actionable absent a causal relationship between the breach and the ensuing harm. Coyne v. Taber Partners, 53 F.3d 454, 459 (1st Cir. 1995). "As is true in most jurisdictions, foreseeability is a central issue in these cases, as it is an element of both breach of duty and proximate cause." Vázquez-Filippetti, 504 F.3d at 49. Therefore, assuming, *arguendo*, that Defendant breached its duty to provide maintenance to the crane, Plaintiffs' injuries must have been reasonably foreseeable to Defendant.

In light of the aforementioned principles of law, Defendant cannot be held liable if the injury was not foreseeable. Moreover, Defendant raises the "assumption of risk" defense, arguing that Barreiro assumed the risk of his injuries when he touched the crane; attributing Plaintiffs injuries to their own negligence. However, the determination of whether it was reasonably foreseeable to the lessor that, at the time and place in question, someone could get hurt while operating the crane in the deteriorated condition is a question for the jury and not the court on summary judgment. Marshall v. Pérez Arzuaga, 828 F.2d 845, 849 (1st Cir. 1987) ("Not only ordinary fact questions, but also evaluative applications of legal standards (such as the concept of legal foreseeability) to the facts are properly jury questions. In any case where there might be reasonable difference of opinion as to evaluative determinations . . . the question is one for the jury.") (citing Jimenez v. Pelegrina, 112 P.R. Dec. 881, 885 (1982); see Pabon Escabí v. Axtmayer, 90 P.R.R. 20, 25 (1964). "In negligence cases, determinations of foreseeability and of

whether a defendant acted reasonably fall within the province of the jury. Hence, a court should be cautious in using the summary judgment device to dispose of such cases." Chapman, 803 F. Supp. at 573 (citing TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 450 n. 12 (1976)).

Accordingly, because foreseeability is a central issue in negligence claims, as it is an element of both breach of duty and proximate cause, Vázquez-Filippetti, 504 F.3d at 49, and its determination is within the province of the jury, the court finds an issue of fact exists as to this issue, the resolution of which possesses the capacity to sway the outcome of this case.

**IV.  Conclusion**

Since reasonable minds may differ in answering the issues raised by both parties, it would be improper for the court to usurp this case from the jury. Wherefore, the Defendants' motion for summary judgment is hereby **DENIED**.

**SO ORDERED.**
In San Juan, Puerto Rico this 13th day of March, 2015.

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI

United States District Judge